UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEOFFREY SULESKI,

     Plaintiff,

v.

**DECISION AND ORDER**
11-CV-376S

THOMAS J. HARLACH, DET. LOUIS S. RUBERTO,
and SGT. J. McGRATH,

     Defendants.

## I. INTRODUCTION

Plaintiff, Geoffrey Suleski, brings this action under 42 U.S.C. § 1983, asserting claims for false arrest, malicious abuse of process, and malicious prosecution against three defendants, all of whom were police officers for the City of Buffalo during the relevant time period. Each party has moved for summary judgment, with Defendants Ruberto and McGrath moving together.[1] For the following reasons, Officer Harlach's and Plaintiff Suleski's motions are denied, but Defendants Ruberto and McGrath's motion is granted.

## II. BACKGROUND

### A. Facts[2]

Although many of the details of this case are in dispute, the parties agree on a general outline of events that began sometime in 2004 when Suleski, as part of his business, Imperial Sandblasting, agreed to paint and sandblast Officer Harlach's 1975

---

[1] Suleski moved for summary judgment on liability only.

[2] In accordance with Local Rule of Civil Procedure 56, Suleski, and Defendants McGrath and Ruberto, have filed statements of facts; Defendant Harlach has not. Although Suleski filed his statement late, Defendants McGrath and Ruberto responded to it, and thus this Court will draw from the statements provided to it. But because Harlach has not filed this required document, any statements uncontroverted by his co-defendants may be deemed admitted. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted). Defendants Ruberto and McGrath's statement of facts will be referred to as "R & M's Stmnt."

Gran Torino. (R & M's Stmnt., ¶ 1; Docket No. 28-5; Pl.'s Stmnt., ¶ 5, 6; Docket No. 31). Around this time, Harlach took the car, which was not in running condition, to Suleski's business at 25 Katherine Street in the City of Buffalo. The parties did not discuss, or least agree on, a total price. (Pl.'s Stmnt., ¶ 7, 8.) But sometime before May of 2004, Suleski informed Officer Harlach that he was having financial difficulties, and as a result, Officer Harlach gave Suleski a $2,500 check as a loan – which may have been meant to be repaid in the form of work on the car – to prevent Suleski's house from entering foreclosure. (R & M's Stmnt. ¶¶ 6, 7; Pl.'s Stmnt., ¶ 11.) Over the course of the next year and half, Suleski performed some work on the car, and Officer Harlach would visit the shop occasionally. (Pl.'s Stmnt., ¶ 15.) But Suleski admits that he did no work on the car for an "extended period of time." (Compl., ¶ 15.)

In the Fall of 2006, Suleski lost his business to foreclosure and he was forced to move the car. (Pl.'s Stmnt., ¶ 17). So, with Officer Harlach's permission, he took the car to a location in Blasdell, New York and later to a location in Franklinville, New York, where there was a building that he intended to use as an auto-repair shop. (Id., 18–20, 22.) While in Blasdell, the car was kept, at least for a time, outdoors and exposed to the elements. (Trial Tr.,[3] 70:13–71:15; Docket No. 28-2.)

By 2008, with the work on the car still unfinished and calls to Suleski going unanswered, the relationship between Suleski and Officer Harlach had soured, and Officer Harlach met with Assistant District Attorney John Schoemick, and Defendants McGrath and Ruberto, about the possibility of bringing criminal charges. (R & M's Stmnt., ¶ 15.)

---

[3]As noted below, a criminal trial was eventually held in connection with these events.

After being told criminal charges would be proper, on January 10, 2008, Harlach filed a criminal incident report, alleging that Suleski had committed grand larceny and unauthorized use of a motor vehicle; Officer Harlach was admittedly, however, still trying to contact Suleski to get the work completed. (Pl.'s Stmnt., ¶ 33.)

Those efforts apparently proved fruitless, and Officer Harlach eventually retrieved his car "in the spring of 2008." (Harlach Aff., ¶ 8; Docket No. 26-1.) But the car, once "in very good condition," was now in disrepair. (Id., ¶ 16.) According to Harlach, he found his car covered in snow, and "car parts were scattered around the front engine bay"; it was "badly rusted," the interior was "moldy," and "nuts and acorns were found in the headliner." (Id., ¶ 8.) Suleski conceded that some of this damage might have occurred when the car was kept outside in Blasdell. (Trial Tr., 71:3–6.)

Sometime around this point, Sgt. McGrath began an investigation, and he also contacted Assistant District Attorney Schoemick. (R & M's Stmnt., ¶ 23.) In March of 2008, Sgt. McGrath gave Officer Harlach a "warrant card," which allowed Officer Harlach to file a criminal complaint and apply to Buffalo City Court for an arrest warrant. On April 1, 2008, Defendant Harlach signed two complaints and filed them, along with a supporting deposition compiled by Defendant Ruberto, with Buffalo City Court. The complaints charged Suleski with criminal mischief and grand larceny, both in the fourth degree.[4] (Pl.'s

---

[4]"A person is guilty of grand larceny in the fourth degree when he steals property and when," as relevant here, "the value of the property exceeds one thousand dollars." N.Y. Penal Law § 155.30.

"A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she," as relevant here, "[i]ntentionally damages property of another person or . . . [r]ecklessly damages property of another person in an amount exceeding two hundred fifty dollars." N.Y. Penal Law § 145.00.

3

Stmnt., ¶ 61.) On the basis of that complaint and a subsequent warrant, Suleski was arrested and arraigned on May 5, 2008.

The case eventually went to trial, and on June 30, 2008, Judge James A. Mcleod acquitted Suleski on both charges.

Suleski now brings this action, alleging that his arrest and subsequent prosecution violated his federal rights.

**B.     Procedural History**

Suleski filed a complaint in this Court on May 2, 2011. (Docket No. 1.) After each defendant answered, the parties conducted discovery and on October 31, 2012, Suleski moved for summary judgment. That motion was quickly followed by Defendants, who filed their motions on the same date.  Briefing thereon concluded on January 28, 2013, at which time this Court took the motions under consideration.

### III.  DISCUSSION

**A.     Motions for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398

U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When the parties cross-move for summary judgment, "[i]f there is any genuine issue of material fact, both motions must be denied as to those issues of law." Thomas Publ'g Co. v. Div. of Human Rights, 456 F.Supp. 1104, 1108 (S.D.N.Y. 1978).

\*\*\*\*

Suleski generally contends that Defendants abused their position as police officers and unlawfully turned a civil dispute into a criminal action. He asserts three causes of action: false arrest, malicious prosecution, and malicious abuse of process. Each turns on a probable-cause determination. That is, although each claim has unique elements, a lack of probable cause is common to all of them, and unless Suleski can demonstrate a lack of probable cause, his claims must fail. See Manganiello v. City of New York, 612 F.3d 149, 160–61 (2d Cir. 2010) ("[T]o prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff . . . must prove . . . lack of probable cause for commencing the proceeding . . ."); Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir.

2007) (probable cause is considered a complete defense to a false-arrest claim); Sforza v. City of New York, No. 07CIV6122DLC, 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009) (citing Rosen v. Hanrahan, 2 A.D.3d 352, 768 N.Y.S.2d 818, 819 (1st Dep't 2003)) ("[T]he presence of probable cause negates a claim for abuse of process.").

Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996)). "Probable cause may also exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it." Manganiello, 612 F.3d at 161. But, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." Id. (quoting Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983)). Ultimately,"[t]he existence of probable cause must be determined by reference to the totality of the circumstances. Id. (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Even if probable cause was lacking, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause,'" which exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera, 361 F.3d at 743 (citations omitted). This test "is more favorable to the officers than the one for probable cause." Id.

A presumption of validity applies to an arrest where, as here, it was made under the authority of a warrant, but a plaintiff can rebut this presumption by showing that there were misstatements or omissions in the warrant application. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991). Here, Suleski must demonstrate that Officer Harlach "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information and that such false or omitted information was necessary to the finding of probable cause." Id. at 870 (quoting Franks v. Delaware, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

Further, as the Golino court explained:

> Whether an item of information is material or not is, in the context of a motion for summary judgment, a mixed question of law and fact. The legal component depends on whether the information is relevant to a given question in light of the controlling substantive law. The factual component requires an inference as to whether the information would likely be given weight by a person considering that question.

Id. (citations omitted).

This analysis implicates what is known as the "corrected affidavits doctrine." Under this doctrine, courts must "look to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law. Escalera, 361 F.3d at 743–44.

Thus, this Court must turn to the arrest-warrant applications prepared by Officer Harlach, the first of which states:

> During the time period of April, 2004 though March, 2008, at 25 Katherine Street, the defendant did steal property owned by Thomas Harlach, said property consisting of cash and having

> a value in excess of $1,000.00, to wit: approximately $2,500.00, in that the defendant did take the complainant's 1975 Ford Torino and did agee [sic] to refurbish it, paint it, and restore it, and did accept $2,500.00 in cash from the complainant to do the work. Over the course of the last four years, the defendant has not only not completed the work, but has disassembled the vehicle and has done considerable damage to it while it was in his care. The complainant, over the last four years, has made several attempts to get the issue resolved, to get his money back or to have the defendant complete the work, to no avail. The vehicle was finally returned to the complainant in March of 2008, in pieces and in damaged condition. The defendant still has not returned the cash to the complainant.

(Grand Larceny Arrest Information/Complaint, attached as Ex. "E"; Docket No. 28-2.)

The second, charging criminal mischief, states in relevant part that Suleski:

> [H]aving no right to do so nor any reasonable grounds to believe that he had such right, did recklessly damage the property of Thomas Harlach, in that he did accept payment from the complainant for the restoration of the complainant's 1975 Ford Torino, and then while in possession of the Ford Torino, did recklessly damage the vehicle, in that he did not complete the restoration but in fact took the vehicle apart, damaging the parts and pieces, and did also sandblast the vehicle to prep it for painting, but then did not complete the paint job and left the vehicle to the elements where it rusted and became damaged.

(Criminal Mischief Arrest Information/Complaint, attached as Ex. "E"; Docket No. 28-2.)

Suleski essentially contends that Harlach made one material misstatement and one material omission in these complaints. First, Suleski argues that the $2,500 was simply a loan, and not payment as Officer Harlach asserted. Second, Suleski argues that the complaint was misleading because Officer Harlach omitted the fact that he knew the car would have to be disassembled for Suleski to work on it – that, in fact, Officer Harlach authorized Suleski to disassemble the car.

Viewing the evidence in a light most favorable, and drawing all inferences most favorable to the non-moving parties, this Court cannot find that there is no genuine issue of material fact. To start, the representations in the warrant applications paint an entirely one-sided picture of the relationship between Officer Harlach and Suleski. Despite the complicated history between these two and the 1975 Gran Torino, the applications suggest that Suleski simply absconded with Officer Harlach's $2,500 and intentionally or recklessly damaged his vehicle. But unlike the typical warrant application, where a police officer must rely on victim statements and endeavor to put varied pieces of a puzzle together, Officer Harlach was in the best possible position to know that the facts were not as simple as he portrayed them to be. Officer Harlach himself testified that the parties never "discuss[ed] the exact price" and that he gave Suleski $2,500 "to help him out on the foreclosure of his house." (Harlach Dep., 14:1-3; Docket No. 31-3.) But he swore in his warrant affidavit that Suleski "did accept $2,500.00 in cash from the complainant to do the work." Harlach also testified that the two agreed that Suleski would take the engine, transmission, and front clip off the car. (Id., 13:13–22.) But his warrant affidavit suggests that the car was tampered with maliciously.

Moreover, at the criminal trial, Officer Harlach testified that he would often stop by the shop and check on the progress of the car because it was conveniently located in "A" District, where Officer Harlach was stationed. (Trial Tr., 22:21–25.) Since Suleski did not lose his shop until the Fall of 2006, it appears that Officer Harlach did this for some time after loaning (or paying) Suleski the money in May of 2004, only a month after Suleski initially got the car. This information – that he was aware at least some work was being

performed on the car after he had given Suleski the money – was also omitted from the warrant application.

That is not all; the warrant application omits other potentially pivotal information. Like the fact that Harlach was aware that Suleski lost his shop and that the car would have to be moved to different location. And that Harlach, good friends with the owner of a trucking company, arranged for the car to be moved himself, but never bothered to inquire into its whereabouts. Indeed, it appears he was not concerned with the car, admitting at trial that he could have ascertained the car's location with only a phone call, but never did. (Trial Tr. 26:8–10.)[5] Some of this long delay – from the time Officer Harlach gave Suleski the car to the time he got it back – can be thus attributed to his own indifference, or at least lack of diligence. Indeed, for at least two years Officer Harlach consented to the slow pace of work; he could have taken the car back at any time, especially when he learned that Suleski had lost his shop; but instead Officer Harlach stuck with him and even assisted Suleski in moving the car to a location unknown to him. The warrant application is noticeably silent on this score. See Brown v. D'Amico, 35 F.3d 97, 99 (2d Cir. 1994) ("Though an officer need not volunteer every fact that arguably cuts against the existence

---

[5]The full exchange on this point, with questioning on cross-examination by Attorney Peter Juliano, is as follows:

> Q. You know the owner of Nu-Era Flatbed and you never knew where your vehicle was going?
> A. I never asked where the vehicle was.
> Q. So when the vehicle was in [Blasdell], it was a mystery to you where the vehicle was?
> A. I could have found out, but I never even asked.
> Q. But you didn't care to?
> A. Cared where it was going to get done.
> Q. You – you never asked?
> A. I never asked. The guy told me he dropped it off.

(Trial Tr., 26:5–14.)

of probable cause, the officer may not omit circumstances that are critical to the evaluation of probable cause.").

It is at least clear that, four years after giving his car to Suleski, Officer Harlach got it back in a deteriorated condition. This is decidedly not what he bargained for. But it is unclear if, in light of these omitted, one-sided, and misrepresented facts, there remains an objective basis to support arguable probable cause that Suleski's conduct amounted to criminal activity – *i.e.*, whether he recklessly damaged the vehicle with no reasonable belief that he had a right to do so, stole the $2,500, or committed some other crime – and not simply civil negligence.

Officer Harlach, in fact, who is represented by counsel, submitted only his own affidavit, and no legal argument whatsoever to support his motion for summary judgment. This alone is sufficient reason to deny it. See L. R. Civ. P. 7(a)(2)(A) (memorandum of law is required "absent leave of Court or as otherwise specified, upon any motion filed pursuant to Federal Rules of Civil Procedure 12, 56 or 65(a)). Failure to comply with this requirement may constitute grounds for resolving the motion against the non-complying party").[6] While Officer Harlach does point out, through a responding affidavit (again with no memorandum or any citation to legal authority), that he checked with several police officers and an assistant district attorney before applying for the arrest warrant, this, for several reasons, does nothing to assist his defense. First, this Court cannot know what he told the assistant district attorney with whom he checked. More importantly, the relevant question is not whether he received advice, or the quality or quantity of that

---

[6]Officer Harlach and his attorney were even put on notice of this deficiency through Suleski's responding papers. But they never even attempted to cure it.

advice; instead, the relevant question asks whether the arrest-warrant application contained any relevant omissions or misrepresentations. This Court has found that there were, and any advice he received before making the application is entirely irrelevant.

Thus, having found relevant omissions and misrepresentations, this Court must turn to the next question: whether a corrected affidavit would demonstrate probable cause. "The weight," however, "that a neutral magistrate would likely have given the above information . . . is not a legal question but rather is a question to be resolved by the finder of fact." Golino, 950 F.2d at 872; see also Velardi v. Walsh, 40 F.3d 569, 574 (2d Cir. 1994) ("Nonetheless, if the evidence, viewed in the light most favorable to the plaintiffs, discloses no genuine dispute that a magistrate would have issued the warrant on the basis of the 'corrected affidavits,' then" summary judgment must be entered in favor of defendants). This Court finds that there is a genuine issue of fact as to the weight a neutral magistrate would assign these facts. Accordingly, both Suleski's and Officer Harlach's motions for summary judgment are denied.[7] See Velardi, 40 F.3d at 574 n.1 ("[T]ry[ing] to to predict whether a magistrate would have found probable cause if he had been presented with truthful information . . . is a question of fact rather than of law.").

****

The same cannot be said, however, about Defendants McGrath, who issued the warrant card, and Ruberto, who compiled the supporting deposition for Officer Harlach's warrant application. Suleski's argument with respect to these defendants rests on the

---

[7]Because lack of probable cause is essential to each of Suleski's causes of action, and because Officer Harlach has not raised any other argument for dismissal in his motion for summary judgment (in fact, he hardly raised the probable-cause issue) this Court will not undertake an analysis of the remaining elements of each claim asserted.

proposition that they contributed to the misleading warrant application by overlooking facts associated with, and failing to conduct a full investigation into, the circumstances of Suleski's arrest.

It is true that these defendants did little by way of investigation. Though Sgt. McGrath did call Suleski on at least two occasions, it is undisputed that they both relied primarily Officer Harlach's account of the story.

But even assuming that these officers could be held liable for their limited role in Suleski's arrest, the evidence establishes that Sgt. McGrath and Det. Ruberto were presented with Officer Harlach's version of the story – a story that, at the very least, created arguable probable cause, entitling these officers to the protections of qualified immunity. See Manganiello, 612 F.3d at 161.

Officer Harlach's allegations suggested that Suleski had taken his money, kept his car for four years, and damaged it. Although Officer Harlach knew that that was only part of the story, Defendants McGrath and Ruberto did not. As Sgt. McGrath testified, he believed that Suleski had refused to return the vehicle and was unaware of the agreement between Suleski and Officer Harlach. (McGrath Dep., 109:14–15, 140:1–10; Docket No. 28-2.) Det. Ruberto also testified that his knowledge of the case came from Officer Harlach, who showed Det. Ruberto pictures of the damaged Gran Torino. (Ruberto Dep., 150:23; Docket No. 28-2.) Officer Harlach also informed Det. Ruberto that, despite multiple attempts to contact Suleski, he could not reach him or get his car back. (Id.,151:1 – 7, 170:4–9.)

While Suleski tries to poke holes in these defendants' probable-cause determination – noting, for instance, that Sgt. McGrath, having seen a copy of the check

Officer Harlach gave Suleski, should have known the money was a loan and not payment because the memo-line read "Loan" – a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). Furthermore, Officer Harlach's version of events was rendered plausible, and "his credibility was buttressed by the fact that he [is] a law enforcement officer." See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir.1997) (holding that arresting officer was entitled to rely on version of altercation given by fellow officer, despite plaintiff's protestations of innocence). Finally, even though further investigation might have been the more prudent course, it does not "matter that an investigation might have cast doubt upon the basis for the arrest," given Officer Harlach's credible allegations. Curley, 268 F.3d at 70. Accordingly, this Court finds that to the extent Sgt. McGrath and Det. Ruberto contributed to Suleski's arrest, they were justified in relying on Officer Harlach's version of the events, which were sufficient to demonstrate arguable probable cause. Defendants McGrath and Ruberto therefore cannot be found liable under Section 1983, and their motion for summary judgment is granted.

## IV. CONCLUSION

Although Officer Harlach arrested Suleski under the authority of a court-issued arrest warrant, Suleski has demonstrated that the application for that warrant contained relevant omissions and misrepresentations. Accordingly, Officer Harlach's motion for summary judgment is denied. Further, because a fact finder must determine the weight a neutral magistrate would give those omissions and misrepresentations, Suleski's own summary-judgment motion is also denied. But Defendants McGrath and Ruberto's motion

for summary judgment is granted because whatever limited role they played in Suleski's arrest was supported by, at the least, arguable probable cause.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 25) is DENIED.

FURTHER, Defendant Harlach's Motion for Summary Judgment (Docket No. 26) is DENIED.

FURTHER, that Defendants McGrath and Ruberto's Motion for Summary Judgment (Docket No. 28) is GRANTED.

Dated:     August 30, 2013
              Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                              Chief Judge
                                        United States District Court